IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAIME ALICEA-ACEVEDO, et al.,

Plaintiffs

v.                                                          CIVIL 05-1701 (FAB) (JA)

LUIS RIVERO-CUBANO, et al.,

Defendants

OPINION AND ORDER

This matter is before the court on a motion for reconsideration filed by defendants, Luis Rivero-Cubano; in his official capacity, Rafael Billoch, Francisco González, Edmundo González, William Acevedo-Rivera, César Olivera-Linares, Eliezer Ramos-González, Segundo Soto-Cruz, Idalia Alberty-Beltrán, Roberto Soto, Antolín González, Alberto Nolasco, Nereida Bonet, Nereida Portalatín, and Carmen Centerno-Rivera; in their personal capacities (collectively "defendants"). (Docket No. 79, November 13, 2007.)  Defendants contend this court erred in granting summary judgment to plaintiffs in an Opinion and Order dated October 31, 2007. (Id.)  In that Opinion and Order, plaintiffs were granted summary judgment because defendants, through their failure to reply to plaintiffs' requests for admissions, were held to have admitted all the facts necessary to satisfy plaintiffs' claims of adverse employment actions based on political discrimination.  (See Docket No. 78.)

Defendants set out three arguments in support of their motion: First, defendants argue five of the seventeen plaintiffs' claims of adverse employment actions against five of the sixteen defendants are supported by the admissions

CIVIL 05-1701 (FAB) (JA)                    2

made by the defendants.  (Docket No. 79, at 4-5.)  The rest of the admissions, allege the defendants, concern claims for hostile work environment based on political discrimination. (Id. at 5.)  Second, defendants allege summary judgment was improper because it was based solely on plaintiffs' prima facie case, and defendants were not afforded an opportunity to establish their nondiscriminatory reasons for the challenged job actions.  (Id. at 6.)  Third, defendants allege that none of them had the authority to grant plaintiffs the promotions and salary raises the plaintiffs sought, and so there was no causal relationship between the defendants and the deprivation of plaintiffs' federal rights.  (Id. at 4, 6.)  Along with these arguments defendants submit a "clarification," alleging that plaintiff's requests for admissions were not filed before this court.  (Id. at 4.)

Additionally, defendants allege that Luis Rivero-Cubano was never served with process and therefore this court has no personal jurisdiction over him in this matter; there are no allegations against him in the plaintiffs' complaint; and there are no admissions deemed admitted by default as to defendant Rivero.  (Id. at 6.)

Finally, defendants note that plaintiffs brought an action for adverse employment actions based on political discrimination and were never terminated, as this court inadvertently stated in its last opinion.  (Id. at 5; Docket No. 78, at 9-10.)

On November 26, 2007, plaintiffs filed a response in opposition to defendants' motion for reconsideration.  (Docket No. 80.)  Plaintiffs noted that each of them specifically alleged which defendant had subjected each plaintiff to adverse employment actions, political harassment, and hostile working environment resulting therefrom.  (Id. at 2.)  Plaintiffs also noted that these allegations have been deemed admitted against each of the relevant defendants.

CIVIL 05-1701 (FAB) (JA)                    3

(Id. at 3.)  Plaintiffs only agreed with defendants that the clerical errors made by this court, the words "terminated" and "discharged," should be corrected to read "adverse employment actions."

Having considered the arguments of the parties and for the reasons set forth below, defendants' motion for reconsideration is GRANTED in part and DENIED in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2005, plaintiffs filed a complaint under 42 U.S.C. § 1983, alleging that defendants discriminated against them because of plaintiffs' political beliefs as members of the New Progressive Party (hereinafter "NPP"). (Docket No. 1.)  Plaintiffs alleged in their complaint "[d]efendants have retained new employees to perform many of the duties that were previously performed by the plaintiffs and/or have assigned those duties to employees identified with the Popular Democratic Party." (Id. at 5, ¶ 26.)  Luis Rivero-Cubano was specifically named as one of the defendants against which plaintiffs sought relief: "LUIS RIVERO CUBANO, Secretary of the Department of Agriculture, and as such is the nominating authority to which if the injunctive relief requested is granted should be directed." (Id. ¶ 28.)

In the first cause of action in the complaint, every single plaintiff made the same allegation, (1) that they did not receive a raise in salary, promotion, or fringe benefit similarly granted to employees identified with the Popular Democratic Party (hereinafter "PDP"); (2) that the majority of the responsibilities associated with plaintiff's position were taken away by one of the defendants; (3) that the plaintiff performed his duties efficiently and there had been no complaint of his performance; and (4) that the only reason for not receiving the raise in

CIVIL 05-1701 (FAB) (JA)                    4

salary or promotion the plaintiff was due was because of his affiliation with the NPP.  (Docket No. 1, at 9-13.)  In each of those allegations each plaintiff's name and position, along with the defendant who took away the plaintiff's position, could simply be replaced with the next plaintiff, position and relevant defendant. (See Id.)

In the second cause of action in the complaint, every plaintiff alleged they were subjected to political harassment by one of the defendants.  (Id. at 14-20.)  Again, each of the allegations by the different plaintiffs read almost exactly alike: (1) a specific defendant subjected the plaintiff to political remarks; (2) these remarks were on an almost daily basis; (3) these remarks continue today; and (4) these remarks provoke a hostile work environment solely on the basis of plaintiff's membership to the NPP.  (Id.)

On June 27, 2005, summons were issued against the defendants; Luis Rivero-Cubano was among the defendants against whom a summons was issued. (Docket No. 2.)   On July 28, 2005, proof of service was filed by the plaintiffs as to defendants Rafael Billoch, Eliezer Ramos-González, Segundo Soto-Cruz, Idalia Alberty-Beltrán, Nereida Bonet, Francisco González, Edmundo González, William Acevedo-Rivera, César Olivera-Linares, Alberto Nolasco, and Nereida Portalatín. (Docket Nos. 7 & 8.)  On August 17, 2005, proof of service  was filed by plaintiffs as to defendants Roberto Soto and Antolín González.  (Docket No. 13.)  On September 22, 2005, proof of service was filed by plaintiffs as to defendants Carmen Centerno-Rivera.  (Docket No. 15.)

On September 22, 2005, all the defendants against whom proof of service of process had been filed thus far filed their answer to plaintiffs' complaint and were individually named in the first paragraph of their answer.  (Docket No. 16.)

CIVIL 05-1701 (FAB) (JA)                    5

Defendants were represented in the caption to the answer as "LUIS RIVERO-CUBANO, et al."  (See Id.)  One of the affirmative defenses set forth by these defendants was that "[t]here is no causal relationship between any action or omission by the Defendants and the damages claimed in the Complaint."  (Id. at 4.)

On February 3, 2006, defendants, this time not individually named but simply represented as "defendants," filed a motion to request that the March 9, 2006, initial scheduling conference be held in the afternoon.  (Docket No. 21.)  Again, the defendants were represented in the caption to this motion as "LUIS RIVERO-CUBANO, et al."  (See Id.)

On February 16, 2006, Luis Rivero-Cubano filed a motion to join the answer to the complaint.  (Docket No. 28.)

On December 4, 2006, plaintiffs sent defendants requests for admissions pursuant to Federal Rule of Civil Procedure 36.  (Docket Nos. 70-4, 70-5, 70-6, 70-7.)  These requests for admissions went unanswered and on June 4, 2007, plaintiffs filed a motion to compel defendants to comply with the requested discovery.  (Docket No. 56.)  That motion was granted and defendants were deemed to have admitted the allegations in the unanswered requests for admissions.  (Docket No. 60.)

On October 3, 2007, the plaintiffs filed a motion for summary judgment with a memorandum of law and uncontested facts.  (Docket No. 70.)  Along with their motion for summary judgment, plaintiffs filed the unanswered  requests for admissions made of the defendants.  (See Docket Nos. 70-4, at 1-2, 6-7, 10-11, 14-19, 23-25; 70-5, at 1-2, 6-7, 10-12, 16-19, 23-24; 70-6, at 1-3, 4-7, 11-14, 18-19, 21-24; 70-7, at 1-3, 4-5, 6-7, 11-12, 13-14, 22-24.)

CIVIL 05-1701 (FAB) (JA)                    6

Each defendant was deemed to have admitted that (1) they are employees at the Department of Agriculture Service and Development of Farming Administration (hereinafter "ASDA") and PDP members; (2) defendant harassed at least one of the plaintiffs for political reasons; (3) the plaintiff the defendant harassed is an employee of the ASDA; and (4)the defendant knew plaintiff was an NPP member.  (See Id.)

Roberto Soto was deemed to have admitted that (1) he told Jaime Alicea-Acevedo ("Alicea") that Roberto Soto would "personally see to it [Alicea was] forced to resign"; (2) he told Alicea that if he "continued his activities for the NPP [Alicea] would have to resign or he would be dismissed. . ."; and (3) after the 2004 elections Roberto Soto told Alicea that his days at the ASDA were numbered. (Docket No. 70-4, at 2, ¶¶ 6, 7, 8.)

Segundo Soto was deemed to have admitted he told Juan Avilés-Acevedo that (1) Segundo Soto knew Avilés went to a lawyer and knew Avilés was the cousin of the mayor of the city of Moca, an NPP affiliate; (2) Avilés' loyalty to the NPP would never get Avilés transferred to the Moca office, a position Avilés desired; and (3) Avilés, his cousin, and Rosselló, a previous governor of Puerto Rico affiliated with the NPP, were a disgrace to Puerto Rico.  (Id. at 7.)

Segundo Soto was deemed to have admitted he told Raúl Cardona-Salcedo ("Cardona") that (1) it would be in Cardona's best interest to resign or Segundo Soto would make it hell for Cardona because of his political affiliation; (2) Segundo Soto had instructions to see that members of the NPP either resign or be dismissed; and (3) Cardona should work for Rosselló because only those loyal to the PDP should work at the ASDA.  (Id. at 11.)

CIVIL 05-1701 (FAB) (JA)                    7

Edmundo González and William Acevedo-Rivera ("Acevedo") were deemed to have admitted they told Migdalia Cordero-Ramos ("Cordero") that (1) all NPP members are corrupt; (2) all NPP members should be in jail; (3) Cordero is just as corrupt as Rosselló; and (4) "[w]e know that you are an active member of the NPP and as such we consider you a corrupt employee.' (Id. at 15, 17.)

César Olivera-Linares ("Olivera") was deemed to have admitted he told Cordero that (1) it would be in Cordero's best interest to resign or they would make her working conditions hell; and (2) Cordero "will go crazy and that not even Rosselló will be able to help her."  (Id. at 19.)

César Olivera-Linares was also deemed to have admitted he told Jesús A. Cuevas-Pérez ("Cuevas") that (1) Olivera had specific instructions from the director of the ASDA to transfer Cuevas; (2) Cuevas was prohibited from using a phone, desk, chair, secretary or office; (3) Cuevas had to understand that PDP members were the only ones that could work for the ASDA; (4) Cuevas had to understand that "[w]e don't trust NPP members and under no conditions we will assign responsibilities to you"; (5) Cuevas should be ashamed of receiving a check for doing nothing; and (6) "the best thing for [Cuevas] to do is to resign or accept that this will be the working conditions until 2008."  (Id. at 24-25.)

William Acevedo-Rivera was deemed to have admitted he told Luis A. González-Saaveda ("González-Saaveda") that (1) González-Saaveda should be ashamed of being an NPP member; (2) soon Rosselló would be in jail and those who helped him during the 2004 election have no right to work for the government; (3) it was Acevedo's duty to see that all NPP members be dismissed from the government; and (4) González-Saaveda should either resign or switch to the PDP.  (Docket No. 70-5, at 5.)

CIVIL 05-1701 (FAB) (JA)                    8

Francisco González was deemed to have admitted he told Rubén Morales-Vera ("Morales") that (1) he should get used to the idea that the "[PDP] are in power and that he is going to make life miserable for the [NPP]"; (2) there will "never be work for Morales at ASDA and that his choices are either get used to the idea of stealing money from the government by getting a check for doing nothing or switch to the PDP"; and (3) Morales is stealing money from the government and "'that's what republicans do.'"  (<u>Id.</u> at 10.)

Rafael Billoch ("Billoch") was deemed to have admitted that (1) he told Osvaldo Muñiz-Moro ("Muñiz") that the PDP members would see that he would be transferred as many times as possible because Muñiz had a Rosselló bumper sticker on his car; (2) Billoch threatened to file complaints against Muñiz; (3) Billoch told Muñiz he should resign or get used to the idea that "they will pressure him until he resigns, or die." (<u>Id.</u> at 14.)

Eliezer Ramos-González was deemed to have admitted he told Juan José Ortiz-Santiago ("Ortiz") to remember that (1) the "[PDP] are the ones in power now, so we can do whatever we want"; and (2) "persecution is what a member of the NPP deserves because they are all crooks and crooks should not work for the government." (<u>Id.</u> at 18.)

Idalia Alberty-Beltrán was deemed to have admitted she told Ortiz to remember that the "[PDP] are the ones in power now, so we can do whatever we want." (<u>Id.</u> at 20.)

Nereida Portalatín and Carmen Centerno-Rivera were deemed to have admitted they told Limarys Piñeda-Ríos she was incompetent, dumb and stupid because she was an NPP member.  (<u>Id.</u> at 25; Docket No. 70-6, at 2.)

CIVIL 05-1701 (FAB) (JA)                    9

Alberto Nolasco ("Nolasco") was deemed to have admitted that (1) Fernando Ramos-Feliciano ("Ramos") was left without any duties and responsibilities to perform; (2) the person who now uses Ramos's machine is a PDP member; (3) Nolaso told Ramos that Nolasco knew Ramos was a "political agitator"; (4) Nolasco told Ramos there was no place for Ramos at the ASDA; and (5) Nolasco told Ramos he had to understand that only PDP members could work for the ASDA.  (Docket No. 70-6, at 7.)

William Acevedo-Rivera was deemed to have admitted he told Pedro Rosa Nuñez ("Rosa") that (1) Rosa should be ashamed of being an NPP member; (2) "all those that helped Pedro Rosselló during the 2004 election have no right to work for the government and that it is [Acevedo's] duty to see that all members of the NPP be dismissed from government"; and (3) "soon an order would be issued dismissing all those that are identified with the NPP and that if [Rosa] needs his job he should switch to PDP."  (Id. at 12.)

Both Rafael Billoch and Nereida Bonet-Silva were deemed to have admitted they began to harass Frances Rosado-Rivera after she testified in the political discrimination case Muñiz-Acevedo v. Pérez-Cubano, No. 03-1595 (D.P.R. Nov. 23, 2004), and left "admonishments" on her desk.  (Id. at 17, 19.)

Francisco González was deemed to have admitted he told Osvaldo Rosario-Carrión ("Rosario") that (1) Rosario had to "get used to the idea that PDP members have all the power and they can do whatever they want with NPP members"; (2) there is "not going to be any work for [NPP] members at ASDA and that he better get used to that idea"; and (3) NPP members were "crooks." (Id. at 24.)

CIVIL 05-1701 (FAB) (JA)                    10

Francisco González ("González") was also deemed to have admitted that (1) the person who used Daniel Serrano's ("Serrano") machine was a PDP member; (2) Serrano was left without duties and responsibilities; (3) González told Serrano to get used to the idea that the PDP members had all the power; (4) González told Serrano to get used to not doing anything because there was only work for PDP members; (5) González told Serrano that stealing from the government is what NPP members do best; and (6) González told Serrano that PDP members were the only ones who could work for the ASDA.  (Docket No. 70-7, at 2.)

César Olivera-Linares and Antolín González were deemed to have admitted they told Daniel Serrano that (1) Serrano should "get used to not doing anything because there is only work for PDP members"; (2) "stealing money from the government is what NPP do best"; (3) "PDP members were the only ones that could work at the ASDA"; and (4) all NPP members are crooks.  (Id. at 5, 7.)

César Olivera-Linares and Antolín González also were deemed to have admitted that the person who uses Rafael Soto-Pagán's ("Soto-Pagán") machine is a PDP member and that Soto-Pagán was left without responsibilities to perform.  (Id. at 12, 14.)

Francisco González was deemed to have admitted he told Jorge L. Villafañe-Cruz to get used to the idea that the PDP was "in power now," the PDP is "on top," and the PDP "has all the power now."  (Id. at 19.)

César Olivera-Linares ("Olivera") was deemed to have admitted that (1) the person who now uses Fernando Ramos-Feliciano's ("Ramos") machine is a PDP member; (2) Ramos was left without duties or responsibilities; (3) Olivera told Ramos there was no place for him in the ASDA; (4) Olivera told Ramos he is a political agitator; (5) Olivera told Ramos to understand that only PDP members

CIVIL 05-1701 (FAB) (JA)                    11

could work for the ASDA; and (6) every time Ramos complained to Olivera about his working conditions, Olivera would answer that "under no conditions" would Ramos be assigned responsibilities.  (Id. at 23.)

On October 11, 2007, the defendants filed a motion for reconsideration, arguing they never received plaintiffs' requests for admissions and only became aware of them the date plaintiffs filed their motion for summary judgment. (Docket No. 71, at 2-3.)   The defendants' motion for reconsideration was summarily denied; the defendants had been put on notice that plaintiffs expected an answer to their requests for admissions at least four times during the litigation. (Docket No. 74; Docket No. 78, at 6.)

On October 15, 2007, defendants filed a motion opposing plaintiffs' motion for summary judgment.  (Docket No. 76.)  There the defendants set forth the same argument they presented in their motion for reconsideration; that the facts deemed admitted against the defendants could not be used against them in summary judgment because defendants never received the requests for admissions.  (Id. at 3.)

On October 31, 2007, I granted summary judgment on plaintiffs' claims of politically motivated adverse employment actions and denied the defendants' motion in opposition to summary judgment.  (Docket No. 78)  After setting out the standard for summary judgment and the requisite burden-shifting analysis, I specifically found that the defendants' motion failed because they simply rehashed the arguments from their October 3, 2007 motion for reconsideration, and promulgated neither evidence nor argument to show they would have taken the same actions regardless of the plaintiffs' political beliefs.  (Id. at 9-10.)

CIVIL 05-1701 (FAB) (JA)                    12

On November 13, 2007, the defendants filed a motion for reconsideration arguing that summary judgment was improper because (1) only five of the seventeen plaintiffs' complaints of adverse employment actions; those of Daniel Serrano, Jaime Alicea-Acevedo, Jesús A. Cuevas-Pérez, Fernando Ramos-Feliciano, and Rafael Soto-Pagán, against five of the defendants; Francisco González, Roberto Soto, César Olivera-Linares, Alberto Nolasco and Antolín González, were supported by defendants' admissions; (2) defendants were not given the opportunity to establish nondiscriminatory reasons for the challenged employment action; and (3) none of the defendants had the authority to grant the plaintiffs the promotions and salaries they sought.  (Docket No. 79, at 4-6.) Additionally, defendants argue Luis Rivero-Cubano was never served with process, had no admissions deemed against him and has no allegations against him in the complaint.  (Id. at 6.)  On November 26, 2007, plaintiffs filed a response in opposition to defendants' motion for reconsideration.  (Docket No. 80.)

II.  MOTION FOR RECONSIDERATION STANDARD

A motion for reconsideration filed within ten days of the judgment for which it seeks reconsideration is effectively a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e).  Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007) (quoting Aybar v. Crispín-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)).  A movant must show that the court "misapprehended some material fact or point of law" or "that newly discovered evidence (not previously available) has come to light. . . ."  Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006).  Not only is a motion for reconsideration not a proper vehicle to relitigate or rehash matters already decided by the court, Villanueva-Méndez v. Nieves-Vázquez,  360 F. Supp. 2d

CIVIL 05-1701 (FAB) (JA)                    13

320, 322 (D.P.R. 2005), but a party is not entitled to present new arguments on a motion for reconsideration, Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006) (citing Aybar v. Crispin-Reyes, 118 F.3d at 16).   "[M]otions for reconsideration should be granted **sparingly** because parties should not be free to relitigate issues a court has already decided." Villanueva-Mendez v. Nieves-Vázquez, 360 F. Supp. 2d at 324 (emphasis in original). "[M]otions for reconsideration run counter to the operation of the Federal Rules of Civil Procedure, which provide all the necessary safeguards to promote fair decisions.'" Id. at 323.

### III.  DISCUSSION

Up to this point, the theme of this case was that defendants erred in not responding to plaintiffs' requests for admissions and thereby admitted by default several critical facts necessary to plaintiffs' case.   The new theme is that defendants erred in not using their opposition to plaintiffs' motion for summary judgment to properly controvert plaintiffs' arguments.  We take the defendants' allegations in reverse order.

### A.  Adverse Employment Actions and Not Terminations

As a preliminary matter, defendants are correct in noting that the plaintiffs were at no point terminated and at no point alleged they were constructively discharged.  The use of the word "termination" and any implication there were any forced resignations was an error in the October 31, 2007, Opinion and Order. Nevertheless, the mistake was harmless as both termination and constructive discharge are subject to the same test as any other adverse employment action under 42 U.S.C. § 1983.  See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19 (1st Cir. 2006).

CIVIL 05-1701 (FAB) (JA)                    14

B.  Claims Against Defendant Rivero

Defendants argue summary judgment against defendant Luis Rivero-Cubano (hereinafter "Rivero") was improper because: (1) this court had no jurisdiction over Rivero, (2) there were no allegations against Rivero; and (3) there were no requests for admissions deemed admitted by default against Rivero.  None of these arguments grant defendant Rivero any relief.

First, defendants argue this court has no jurisdiction over Rivero because he was never served with process.  I disagree:  defendant Rivero waived this defense because it was not presented in answer or any of his pre-answer motions.

The Federal Rules of Civil Procedure provide that:

> Every defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . insufficiency of service of process. . . . A motion making any of these defenses shall be made **before** pleading if a further pleading is permitted.

Fed. R. Civ. P. 12(b)(5) (emphasis added).  "A defense of lack of jurisdiction over the person, . . . or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof. . . ."  Fed. R. Civ. P. 12(h).  In case there is any confusion, the notes to the 1966 amendment make clear that "certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived.  The specified defenses are [among others] . . . insufficiency of service of process (see Rule 12(b)(2)-5) )."  Fed. R. Civ. P. 12 advisory committee's note.

Rivero's answer to the complaint sets forth no such defense.  The only motion Rivero arguably made before his answer to the complaint was the motion

CIVIL 05-1701 (FAB) (JA)                    15

to reschedule the initial scheduling conference and no such defenses were set forth in that motion.  Therefore, Rivero's argument that he was never served with process is considered waived.

Second, defendants contend there were no allegations against Rivero. However,  the complaint plainly alleges, among other things, that "[d]efendants have retained new employees to perform many of the duties that were previously performed by the plaintiffs and/or have assigned those duties to employees identified with the Popular Democratic Party."  Luis Rivero-Cubano is one of those defendants.  Therefore, defendants' contention that Rivero has no allegations against him is incorrect.

Third, defendants argue there were no admissions against Rivero.  While this is true, no admissions need be deemed against Rivero because, as the Secretary of the Department of Agriculture (hereinafter "Secretary"), he is merely the nominal authority to which an injunction must be directed.  In any event, even if this fact was of any significance, this would be the first time any argument based upon that fact was propounded by the defendants, and as such cannot be considered on a motion for reconsideration.

C.  Defendants' Authority to Grant Plaintiffs Relief

Defendants' clarification that plaintiffs' requests for admissions were not filed before this court must be dispelled:  the requests for admissions which the defendants were deemed to have admitted by default were filed with plaintiffs' motion for summary judgment.

Defendants argue that none of them have the authority to grant plaintiffs the promotions and salary raises they sought and so there was no causal relationship between the defendants and the deprivation of the plaintiffs' federal

CIVIL 05-1701 (FAB) (JA)                16

rights.   This is the first time defendants have proposed this argument. Additionally, defendants provide no evidence to corroborate their allegation. Because new arguments may not be considered in a motion for reconsideration, and, in any event, new evidence may not be considered, this argument cannot be given any merit.

In their answer to the complaint, the defendants did alleged:  "[t]here is no causal relationship between any action or omission by the Defendants and the damages claimed in the complaint."  However, that statement was much broader than defendants' contention in this motion for reconsideration, which sought to explain, finally, **why** there was no causal relationship between defendants acts or omissions and plaintiffs' complaint.

Defendants' motion in opposition to summary judgment would have been an outstanding vehicle for this argument.  Instead, defendants used their motion in opposition to summary judgment to rehash the arguments that failed them in their October 11, 2007, motion for reconsideration.  In their motion in opposition to summary judgment, defendants gave no explanation as to how or why it is defendants had no causal relationship to the adverse employment actions. Therefore, because defendants argue they did not have the ability to grant the relief the plaintiffs sought for the first time in this motion for reconsideration, and because new arguments may not be considered on motion for reconsideration, this argument may not be considered.

D.  Burden-Shifting Under Summary Judgment

Defendants argue that summary judgment was improper because it was based solely on the plaintiffs' *prima facie* case and defendants were not afforded an opportunity to establish nondiscriminatory reasons for the challenged job

CIVIL 05-1701 (FAB) (JA)                    17

actions under the <u>McDonnell</u> burden shifting framework.   This argument is patently contradictory to what are the plain facts.  The defendants were afforded a chance to present legitimate reasons for the adverse employment actions in their opposition to plaintiffs' motion for summary judgment.   Instead, as previously noted, defendants chose to use their motion to oppose summary judgment as a platform to rehash the arguments that failed them in their October 11, 2007, motion for reconsideration. Therefore, this argument is without merit.

### E.  Support of Plaintiffs' Claims by Admissions

Defendants argue that only five of the seventeen plaintiffs' claims of adverse employment actions against five of the sixteen defendants are supported by the admissions made by the defendants.  The rest of the admissions, allege the defendants, at best support claims for hostile work environment based on political discrimination.  While this allegation is not **fully** supported by the facts, it is not without merit:  it is arguable that five of defendants' admissions deemed admitted by default do not support three of the plaintiffs'  claims of adverse employment actions based on political discrimination.

To prevail on a claim of political discrimination under 42 U.S.C. § 1983, "a plaintiff must show that party affiliation was a substantial and motivating factor behind [an adverse] employment action." <u>Marrero-Gutiérrez v. Molina</u>, 491 F.3d 1, 9 (1st Cir. 2007).  To meet this burden, plaintiffs may present evidence of verbal statements of political or personal animus. <u>Peguero-Moronta v. Santiago</u>, 464 F.3d 29, 45-46 (1st Cir. 2006) (citing <u>Rodríguez-Marín v. Rivera-González</u>, 438 F.3d 72, 76 (1st Cir. 2006)) (witness testified defendants made statements to her indicating her demotion was politically motivated).  Plaintiffs may also meet

CIVIL 05-1701 (FAB) (JA)                18

this burden by showing that the defendants were members of the adverse party and that the plaintiffs' duties were reassigned to supporters of the party in power. Peguero-Moronta v. Santiago, 464 F.3d at 46 (citing Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101 (1st Cir. 1997)).   Plaintiffs cannot "[m]erely juxtapos[e] a protected characteristic-someone else's politics-with the fact that the plaintiff was treated unfairly."  Peguero-Moronta v. Santiago, 464 F.3d at 45 (quoting Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000)).

All of the defendants are PDP members and all of them knew the plaintiffs were NPP members.  Roberto Soto told Jaime Alicea-Acevedo "[w]e know that you are an active member of the [NPP] and I will personally see that you are forced to resign."  Rafael Billoch told Osvaldo Muñiz-Moro that because he had a Rosselló bumper sticker they would see that he was transferred as often as possible, and that "they will put pressure on [Muñiz] until he resigns."  Eliezer Ramos-González told Juan José Ortiz-Santiago that the "[PDP] are the ones in power now, so we can do whatever we want and persecution is what a member of the NPP deserves because they are all crooks and crooks should not work for the government."

Segundo Soto-Cruz told Juan Avilés-Acevedo that Avilés' loyalty to the NPP would never get Avilés transferred to the Moca office, a position Avilés desired.  Segundo Soto told Raúl Cardona-Salcedo it would be in his best interest to resign or Segundo Soto would make it hell for him based on his political affiliation.

Alberto Nolasco told Fernando Ramos-Feliciano there was no place for him at the ASDA and that only PDP members could work for the ASDA.  Alberto Nolasco admitted that Fernando Ramos-Feliciano's machine was now being operated by a PDP member.

CIVIL 05-1701 (FAB) (JA)                    19

William Acevedo-Rivera told Luis González-Saaveda it was Acevedo's duty to make sure all NPP members were dismissed from the government and González should resign or switch to the PDP. William Acevedo-Rivera told Pedro Rosa-Nuñez that "if he needs his job he should switch to PDP."

César Olivera-Linares told Migdalia Cordero-Ramos that it would be in her best interest to resign or they would make her working conditions a living hell and that "not even Rosselló would be able to help her." César Olivera-Linares told Jesús A. Cuevas-Pérez that "[w]e don't trust NPP members," that under no conditions was Cuevas to be assigned duties or responsibilities, and that "the best thing for [Cuevas] to do was resign or accept that this will be the working conditions until 2008." César Olivera-Linares told Fernando Ramos-Feliciano there was no place for him in the ASDA, that only PDP members could work for the ASDA, and that under no conditions would Ramos-Feliciano be assigned any responsibilities. César Olivera-Linares admitted that Fernando Ramos-Feliciano's machine is now being operated by a PDP member.

César Olivera-Linares and Antolín González both admitted Rafael Soto-Pagán's machine is now being operated by a PDP member.

Francisco González told Rubén Morales-Vera there will "never be work for him at ASDA" and that he could either get "a check for doing nothing or switch to the PDP." Francisco González told Osvaldo Rosario-Carrión that there is "not going to be any work for [NPP] members at ASDA and that he better get used to the idea."

Francisco González, César Olivera-Linares and Antolín González told Daniel Serrano to get used to doing nothing because there was only work for PDP

CIVIL 05-1701 (FAB) (JA)                    20

members.  Francisco González admitted Daniel Serrano's machine was now being operated by a PDP member.

Therefore, Jaime Alicea-Acevedo, Juan Avilés-Acevedo, Raúl Cardona Salcedo, Migdalia Cordero-Ramos, Jesús A. Cuevas-Pérez, Luis A. González-Saaveda, Rubén Morales-Vera, Osvaldo Muñiz-Moro, Juan José Ortiz-Santiago, Fernando Ramos-Feliciano, Pedro Rosa-Nuñez, Osvaldo Rosario-Carrión, Daniel Serrano, and Rafael Soto-Pagán have established that the adverse employment actions against them were politically motivated.  Since defendants took no pains to present evidence that the adverse employment actions were for non-political reasons, these plaintiffs have succeeded in their 42 U.S.C. § 1983 actions.

Summary judgment should have been denied on the claims of politically motivated adverse employment actions of Limarys Piñeda-Ríos, Frances Rosado-Rivera, and Jorge Villafañe-Cruz.  Nereida Portalatín and Carmen Centerno told Limarys Piñeda-Ríos that because she was an NPP member she was incompetent, dumb and stupid.  Rafael Billoch and Nereida Bonet-Silva began harassing Frances Rosado-Rivera after she testified in the political discrimination case <u>Muñiz Acevedo v. Pérez Cubano</u>, No. 03-1595 (D.P.R. Nov. 23, 2004).  Francisco González told Jorge L. Villafañe that he had to get used to the idea that the PDP is in power now, the PDP is "on top," and the PDP "has all the power now."

Although these defendants' statements and actions against those plaintiffs are politically charged, they do not establish that the adverse employment actions against those plaintiffs were politically motivated.  Therefore, the summary judgment on those claims is reconsidered and denied.

CIVIL 05-1701 (FAB) (JA)                    21

IV.  CONCLUSION

In the view of the above I find that most of defendants' arguments are without merit or may not be considered on motion for reconsideration.  However, summary judgment on plaintiffs Limarys Piñeda-Ríos, Frances Rosado-Rivera, and Jorge L. Villafañe-Cruz' claims of adverse employment actions are reconsidered and denied.  Therefore, defendants' motion for reconsideration is GRANTED in part and DENIED in part.

The scheduled jury trial will be limited to the issue of damages suffered by the plaintiffs as to whom summary judgment was granted.  That jury trial will not entertain the legitimacy of the facts deemed admitted by defendants due to their failure to respond to plaintiffs' requests for admissions.  A second jury trial will be scheduled for the claims of Limarys Piñeda-Ríos, Frances Rosado-Rivera and Jorge L. Villafañe-Cruz.

At San Juan, Puerto Rico, this 10th day of January, 2008.

S/ JUSTO ARENAS
Chief United States Magistrate Judge